Louis F. ARNOLD, Plaintiff,

v.

DUCHESNE COUNTY, Merv Taylor,
Jerry Foote, and Clair Poulson,
Defendants.

No. 92–CV–348.

United States District Court,
D. Utah, C.D.

Jan. 21, 1993.

John D. Russell, Salt Lake City, UT, for plaintiff.

Lynn J. Lund, John P. Soltis, Salt Lake City, UT, for defendants.

## MEMORANDUM DECISION AND ORDER

BENSON, District Judge.

On October 20, 1992, the court heard oral argument on defendants' Motion to Dismiss. The defendants argued that plaintiff Arnold's claim under 42 U.S.C. section 1983

was barred by Utah's two-year statute of limitations. Plaintiff asserted Utah's four-year statute of limitations applied and the claim was timely. Defendants also claimed that plaintiff had failed to state a proper claim for relief under 42 U.S.C. section 1985. The court ruled in favor of defendants, dismissing all claims and agreeing that Utah's two-year statute of limitations applies to section 1983 actions.

Despite the express language of Utah's statute of limitations, which declares that all civil rights actions brought pursuant to 42 U.S.C. section 1983 are subject to a two-year limitations period, two recent opinions from this district court have nonetheless held that Utah's two-year statute of limitations is not applicable to section 1983 actions in federal court. In *Sheets v. Lindsey*, 783 F.Supp. 577 (D.Utah 1991), Chief Judge Jenkins held that the four-year residual statute of limitations for personal injury claims applies in federal actions in Utah brought under 42 U.S.C. section 1983. Shortly thereafter, Judge Anderson of this district followed the *Sheets* holding, applying the four-year residual statute to section 1983 actions. *Worden v. Provo City*, Case No. 91–C–1202A (Unpublished decision, April, 1992).

█ I respectfully disagree with my two colleagues. It is the opinion of this court that the two-year statute of limitations specifically enacted by the Utah Legislature to govern civil rights actions under 42 U.S.C. section 1983 is applicable to such actions brought in federal court. For the reasons set forth below, the court issues this Memorandum Decision and Order.

### I. *Facts*

On April 10, 1988, officers of the Duchesne County Sheriff's Office arrested plaintiff Arnold and charged him with selling a stolen firearm. The complaint against the plaintiff was dismissed by the Duchesne County Attorney's Office on June 27, 1988. On April 17, 1992, plaintiff brought this action against Duchesne County, Sheriff Clair Poulson, and officers Merv Taylor and Jerry Foote, asserting claims under 42 U.S.C. sections 1983, 1985, 1986 and 1988. In addition, plaintiff alleged various state-law claims, including libel, slander, invasion of privacy, and intentional infliction of emotional distress. In making these claims, plaintiff asserted that his arrest had been politically motivated and that the police had actual knowledge at the time of his arrest that the firearm in question was not stolen.

Defendants asserted that plaintiff's cause of action under section 1983 was barred by Section 78–12–28(3) of the Utah Code which specifically imposes a two-year statute of limitations upon claims brought under 42 U.S.C. section 1983. Plaintiff asserted that a four-year statute of limitations applied.

### II. *Background*

When enacting the Reconstruction Civil Rights Acts, Congress did not include specific statutes of limitations governing actions brought under 42 U.S.C. sections 1983 and 1985. Section 1988 of the Acts, however, implicitly endorsed the adoption of state limitations statutes as long as those statutes were not inconsistent with federal law or policy. *Wilson v. Garcia*, 471 U.S. 261, 267, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985); *see* 42 U.S.C. § 1988.[1] Because the separate states had no specific statute of limitations which applied to civil rights actions, the issue then arose as to which

---

1. Title 42 U.S.C. § 1988 provides, in relevant part:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this title, and of title 'CIVIL RIGHTS,' and of title 'CRIMES,' for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.

particular state statute of limitations should apply to civil rights actions. Arguably, each section 1983 claim, depending on its facts, could be analogized to more than one common-law cause of action.

The United States Supreme Court attempted to resolve this issue in *Wilson v. Garcia,* 471 U.S. 261, 276–80, 105 S.Ct. 1938, 1947–49, 85 L.Ed.2d 254 (1985). The Court examined three New Mexico state limitations periods which could be applicable to federal civil rights actions: 1) a two-year period under the state's Tort Claims Act for actions against the state and its employees; 2) a three-year period applicable to injuries to the person or reputation of any persons; and 3) a four-year limitation period for all other actions. The United States Court of Appeals for the Tenth Circuit had concluded that the three-year statute applicable to personal injury actions was the most appropriate choice because a section 1983 claim was considered by the court to be " 'an action for injury to personal rights.' " 471 U.S. at 265, 105 S.Ct. at 1941 (citing 731 F.2d 640 (10th Cir.1984)).

In its review of the issue, the Supreme Court stated that section 1988 directs courts to follow a three-step process in determining the most appropriate statute of limitations. 471 U.S. at 267, 105 S.Ct. at 1942. First, a court is to look to the laws of the United States for guidance. *Id.* Because there was no statute of limitations provided by Congress for section 1983 actions, it was necessary for the *Wilson* Court to move to step two. Step two requires a court to look to state "common law as modified and changed by the constitution and statutes" of the forum state. *Id.* at 268, 105 S.Ct. at 1942. Finding no specific state statute of limitations, the *Wilson* Court found it appropriate to look to the "most appropriate" or "most analogous" statute. *Id.* After analyzing the various possibilities,[2] the Court agreed with the Tenth Circuit and concluded that the "tort action for the recovery of damages

for personal injuries is the best alternative available." *Id.* at 276, 105 S.Ct. at 1947. After making this determination, the Court moved to step three, analyzing whether the statute of limitations violated federal law or policy. *Id.* at 276–79, 105 S.Ct. at 1947–49. The Court concluded that its choice would "not discriminate against the federal civil rights remedy." *Id.* at 276, 105 S.Ct. at 1947.

Despite the *Wilson* Court's intention of clarifying the law, the decision led to confusion and inconsistency in the lower courts. This was due to the fact that many states, unlike New Mexico, had multiple limitations periods for personal injury actions. As a result, courts were uncertain as to which particular personal injury limitations period should apply. In response to this confusion, the Supreme Court clarified its position four years later in *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). There, the Court held that when a state has more than one statute directed at personal injury actions, the general or residual personal injury statute should be used for civil rights actions. 488 U.S. at 249–50, 109 S.Ct. at 581–82. The Court noted that using the residual statute would allow parties to "readily ascertain, with little risk of confusion or unpredictability, the applicable limitations period in advance of filing a § 1983 action." *Id.* at 248, 109 S.Ct. at 580.

At the time of the Tenth Circuit's original ruling in *Wilson v. Garcia,* the Utah State Legislature had enacted several statutes of limitations governing personal injury actions. In *Mismash v. Murray City,* 730 F.2d 1366, 1367 (10th Cir.1984), decided the same day as *Wilson,* the Tenth Circuit noted that Utah had no statute of limitations which was "expressly applicable to actions for injury to the rights of another." *See, e.g.,* Utah Code Ann. § 78–12–28(2) (1992) (two-year limit for death caused by wrongful act or neglect); *Id.* § 78–12–29(4) (one-year limit for libel, slander, assault,

---

**2.** The Court stated that three questions must be answered in determining the "most appropriate" or "most analogous" statute of limitations. *Wilson,* 471 U.S. at 268, 105 S.Ct. at 1942. Those questions are: 1) whether state or federal law

governs the characterization of a section 1983 claim; 2) whether all section 1983 claims should be characterized in the same way; and 3) which state statute provides the most appropriate limiting principle. *Id.*

battery, false imprisonment or seduction). Consequently, the Tenth Circuit looked at other limitations periods, noting that the residual four-year statute applied to all other personal torts not specifically enumerated. *Mismash,* 730 F.2d at 1367 (citing *Matheson v. Pearson,* 619 P.2d 321 (Utah 1980)). The Tenth Circuit then concluded "that all section 1983 claims brought in federal court in Utah are subject to the four-year limitations period." *Id.*

The Utah Supreme Court followed the Tenth Circuit's holding and applied the four-year residual statute in *Maddocks v. Salt Lake City, Corp.,* 740 P.2d 1337, 1339 (Utah 1987). With the *Maddocks* ruling, there appeared to be no doubt that any section 1983 claim brought in Utah, whether in federal or state court, would be subject to a four-year statute of limitations. In 1987, however, the Utah Legislature enacted a two-year statute of limitations which specifically addressed civil rights claims under section 1983, as follows:

Within two years, an action:

> . . . . .

> (3) for injury to the personal rights of another as a civil rights suit under 42 U.S.C. 1983.

Utah Code Ann. § 78–12–28(3) (1992).[3]

The issue before the court is whether this statute of limitations, passed by the Utah Legislature after the *Wilson, Mismash* and *Maddocks* decisions, supersedes the four-year residual limitations period. The court concludes that it does.

### III. *Discussion*

■ When Congress passed the Civil Rights Acts, it intentionally deferred certain matters such as time limitations to the states. *See* 42 U.S.C. § 1988. As long as these limitations are consistent with federal law and policy, a state's choice should be respected by the federal courts. *Wilson,* 471 U.S. 261, 266, 105 S.Ct. 1938, 1941, 85 L.Ed.2d 254 (1985); *Robertson v. Weg-*

*mann,* 436 U.S. 584, 593, 98 S.Ct. 1991, 1996, 56 L.Ed.2d 554 (1978). If, however, the time period provided is too short to provide adequate due process or if the state has improperly discriminated against a federal cause of action, the limitations period should be rejected.

In Utah, the legislature has clearly set a two-year statute of limitations for civil rights actions under 42 U.S.C. section 1983. The legislature has also set a four-year limit for "[a]n action for relief not otherwise provided for by law." *Id.* § 78–12–25. Because Utah law provides for several different statutes of limitations for personal injury actions, the four-year statute has been deemed to be the residual or general personal injury limit. If the two-year specific limitations period had not been enacted, it is clear that the residual four-year statute would be applied to section 1983 actions. *See Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Mismash v. Murray City,* 730 F.2d 1366 (10th Cir.1984).

In choosing the statute of limitations applicable to a section 1983 action, the United States Supreme Court stated that courts should look to the "most appropriate" or "most analogous" state statute of limitations. *Wilson v. Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). In making this determination, it is logical to assume that the Supreme Court used the terminology of most appropriate or analogous because there was no express statute of limitations at issue in either *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), or *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). Neither case addressed the possibility of a limitations period expressly applicable to section 1983 claims, and with no express statute, the Court was forced to decide which statute of limitations was "most appropriate." In the instant case, however, Utah law provides a limitations

---

**3.** In *Maddocks v. Salt Lake City Corp.,* 740 P.2d 1337 (Utah 1987), the Utah Supreme Court noted that the Utah Legislature made this change in the statute of limitations effective April 27, 1987. The change, however, occurred after the *Maddocks* case, and therefore, did not apply to

the decision. Noting the change in the limitations period with the new statute, the Utah Supreme Court stated it would "leave the validity of that [two-year] restriction for later adjudication." 740 P.2d at 1339 n. 1.

period which expressly addresses section 1983 cases. Utah's two-year statute of limitations is obviously the "most analogous" to section 1983 actions.[4]

In finding to the contrary, the district court in *Sheets v. Lindsey*, 783 F.Supp. 577, 581 (D.Utah 1991), applied Utah's four-year residual statute in a section 1983 claim, holding that it was the most applicable limitations period. The court's choice was based on its belief that Utah's two-year statute of limitations directed at civil rights actions was inconsistent with federal law and policy. 783 F.Supp. at 581. The court, relying on the principle of federalism, stated:

> A state is within its sphere of power in our federal system of government, as a matter of state policy, when it limits the time within which a state cause of action may be vindicated in state court. In contrast, a federally recognized or federally created cause of action cannot be foreshortened by specific state legislation.
>
> The concept is simple. The issue before the court concerns the fundamental principle of federalism; namely the geographic division of power. A state lacks the power to truncate federally created or federally recognized rights. The principle of federalism is the perennial message of both the Constitution and the Civil Rights Act. Whether to diminish a federally created right is simply not a choice for a state to make. By passing [this legislation], the State of Utah seeks to make a choice that is clearly outside the realm of their Constitutionally created powers.

*Sheets*, 783 F.Supp. at 581.

The *Sheets* court concluded that simply because the Utah Legislature chose to enact a specific two-year statute of limitations, section 1983 actions in Utah were thereby "foreshortened," "truncated" and "diminished." These assumptions are not warranted. Only if the two-year statute is found to be "inconsistent with federal laws and policy" is it subject to attack.

In essence, the *Sheets* opinion concludes that federal law and policy were violated because the Utah Legislature enacted a statute of limitations specifically directed to a federal cause of action. In addressing

4. Even if the court were to use the analysis adopted by the United States Supreme Court in *Wilson* for determining the "most analogous" limitations period, it still finds the two-year period most appropriate. In *Wilson*, the Supreme Court asked three questions in determining which statute of limitations was most analogous: 1) whether state or federal law governs the characterization of a Section 1983 claim; 2) if federal law applies, whether all section 1983 claims should be characterized in the same way or whether they should be evaluated differently depending upon the varying facts and legal theories presented in each case; and 3) which state statute provides the most appropriate limiting principle. *Wilson*, 471 U.S. at 268, 105 S.Ct. at 1942. The Court concluded that federal law governs the characterization of section 1983 claims, *Id.* at 271, 105 S.Ct. at 1944, that Congress favored a simple approach of applying only one statute of limitations for all section 1983 claims, *Id.* at 275, 105 S.Ct. at 1946, and that if Congress had focused on the issue, "it would have characterized section 1983 as conferring a general remedy for injuries to personal rights." *Id.* at 278, 105 S.Ct. at 1948. The Court then held that section 1983 claims were "best characterized as personal injury actions." *Id.* at 280, 105 S.Ct. at 1949.

In *Meade v. Grubbs*, 841 F.2d 1512, 1523 (10th Cir.1988), the Tenth Circuit looked at the Supreme Court's analysis in *Wilson* and concluded that the Court intended to view "personal injury actions" synonymously with "injuries to personal rights." As a result, the Tenth Circuit held that Oklahoma's two-year statute of limitations for "injury to the rights of another" was applicable to section 1983 claims. 841 F.2d at 1524. The Tenth Circuit noted that this statute was "the only provision in Oklahoma which [was] sufficiently broad to encompass both unintentional *and* intentional infliction of personal injury." *Id.* The United States Supreme Court cited the Tenth Circuit's holding with approval in *Owens v. Okure*, 488 U.S. 235, 242, 109 S.Ct. 573, 577, 102 L.Ed.2d 594 (1989), stating that the *Meade* decision was based on a correct observation "that § 1983 embraces a broad array of actions for injury to personal rights and that the intentional tort is therefore too narrow an analogy to a § 1983 claim."

Following the reasoning of both the *Meade* and *Owens* decisions, the court finds that in the instant case, Utah's two-year statute of limitations is "most analogous" to the civil rights cause of action. Guided by the three questions posed in *Owens*, the court believes that Utah's two-year statute of limitations does not alter the federal characterization of section 1983 and at the same time offers a single limitations period which is clear and express.

that premise, several questions arise. First, is a statute of limitations a federally-created right? If not, how should a statute of limitations be evaluated to determine its legality or constitutionality? Second, is a state within its proper sphere of power in setting a specific statute of limitations for section 1983 claims when Congress has deferred to the states in this area *and* the states have a legitimate interest in these actions by virtue of their concurrent jurisdiction? Finally, are the states prohibited from shortening their residual statutes of limitations for personal injury claims because such an action could be deemed to have "truncated" the right of a party to bring a section 1983 action?

In addressing each of these questions in turn, the court finds that the statute of limitations at issue here is not a federally-created right.[5] To qualify as a substantive limit, the statute of limitations must be contained within the same statute or act which created the cause of action, making the limitations period integral to the right. *Sarfati v. Wood Holly Assocs.*, 874 F.2d 1523, 1526 (11th Cir.1989) (citing *United States ex rel. Texas Portland Cement Co. v. McCord*, 233 U.S. 157, 162, 34 S.Ct. 550, 552, 58 L.Ed. 893 (1914)). If not part of the same act, however, the "limitations period is said to be only a procedural limit on the remedy, and not a substantive limit on the right." *Id.* Because the Civil Rights Acts did not provide for a specific statute of limitations, the state limitations periods should be considered procedural in nature.

 If the limitations period is procedural in nature, procedural due process must be met for the time period to pass constitutional muster. It is therefore necessary that a statute of limitations provide a reasonable time in which a plaintiff may bring suit. *Owens v. Okure*, 488 U.S. 235, 251 n. 13, 109 S.Ct. 573, 582 n. 13, 102 L.Ed.2d 594 (1989) (citing *Burnett v. Grattan*, 468 U.S. 42, 61, 104 S.Ct. 2924, 2935, 82 L.Ed.2d 36 (1984) (Rehnquist, J., dissent-

ing)). For the time provided to be "reasonable," it must be consistent with the policies behind the Civil Rights Acts which include compensating those persons whose civil rights have been violated and preventing abuses of power by persons acting under color of state law. *Burnett v. Grattan*, 468 U.S. 42, 53, 104 S.Ct. 2924, 2931, 82 L.Ed.2d 36 (1984).

In *Burnett*, the Supreme Court noted that unreasonable time limits for section 1983 actions may occur because state legislatures are influenced by the "importance of underlying state claims, the need for repose for potential defendants, considerations of judicial or administrative economy, and the relationship to other state policy goals." 468 U.S. at 53, 104 S.Ct. at 2931. In the *Burnett* case, for example, the Court found that a six-month administrative statute of limitations was inappropriate for a federal civil rights action. *Id.* at 55, 104 S.Ct. at 2932. The critical factor in the decision was the time period in which a plaintiff was required to file a cause of action. The Court concluded that six months, although sufficient for an administrative claim, simply did not afford a plaintiff the proper time to prepare a civil rights complaint. *Id.* at 50–51, 104 S.Ct. at 2929–30. Furthermore, the Court found that the goal of the state administrative procedure, including the short limitations period, was to promptly identify and resolve employment disputes, thereby encouraging conciliation and private settlement. *Id.* at 54, 104 S.Ct. at 2931. These goals, however, were "inconsistent with the central objective of the Reconstruction–Era civil rights statutes" of ensuring that individuals whose federal constitutional or statutory rights had been abridged could recover damages or obtain injunctive relief. *Id.* at 55, 104 S.Ct. at 2932.

In the instant case, there is no evidence that two years is an unreasonable length of time for an individual to bring an action

---

5. Technically, section 1983 is not a federally-created right but rather a federally-created remedy. In examining whether the remedy provided by section 1983 has been "truncated" in some manner, the cause of action should be the focus.

The court believes that the remedy would be "truncated" if, for example, the state of Utah passed a law attempting to limit the substance of the cause of action in some manner.

under section 1983. In fact, at the time of the *Owens v. Okure* decision, which designated residual personal injury periods as most appropriate, several states had residual personal injury statutes of limitations of two years or less. *See Owens*, 488 U.S. at 244–248, n. 8–10, 109 S.Ct. at 578–80, n. 8–10 (Alabama, Arizona, Georgia, Kansas, Texas providing two years residual personal injury statutes; Virginia providing one year). Furthermore, the First Circuit applied a one-year statute of limitations for section 1983 actions brought in Puerto Rico in *Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 12 (1st Cir.1990), and the Ninth Circuit approved the application of California's one-year residual statute of limitations to section 1983 claims in *Del Percio v. Thornsley*, 877 F.2d 785, 786 (9th Cir.1989). *See also McDougal v. County of Imperial*, 942 F.2d 668, 673 (9th Cir.1991) (applying one-year residual statute to section 1985 claims).[6] In light of these cases and because there is no evidence to indicate that two years is an unreasonable time period for a plaintiff to bring a section 1983 action, the court finds that Utah's two-year limitations period does not violate procedural due process.

■ It is also necessary for the court to address the issue of equal protection in assessing the validity of Utah's two-year limitations period.[7] If it can be shown that the Utah Legislature improperly discriminated against the federal cause of action in passing the two-year time period, it may be proper for the court to apply a more appropriate statute of limitations. In assessing the law, however, the court finds no evidence to support the contention that the Utah Legislature improperly discriminated against a federal claim.

■ In addition to, and consistent with, the two-year statute of limitations for section 1983 claims, Utah law provides a two-year time limit on actions brought against state officers "upon a liability incurred by the doing of an act in [their] official capacity, and in virtue of [their] office, or by the omission of any official duty." Utah Code Ann. § 78–12–28(1) (1992). The selection of the same statute of limitations for an action against state officers and for section 1983 claims indicates to the court that the legislature reasonably assessed the length of time required to bring a cause of action against any individual acting under color of state law. Certainly if the Utah Legislature had intended that the two-year time period apply *only* to section 1983 claims brought in federal court while providing a greater time period for a civil rights action in state court, it could be argued that the

6. Interestingly, prior to the United States Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1984), the Ninth Circuit had applied a three-year statute of limitations to section 1983 actions filed in federal courts in California. *McDougal v. County of Imperial*, 942 F.2d 668, 672 (9th Cir.1991). The impact of the *Wilson* decision in California was to shorten the limitations period by two years. *Id.*

7. In the instant case, plaintiff failed to show any class-based or racial animus to support a claim under 42 U.S.C. section 1985. As a result, the court will not decide in this opinion whether Utah's two-year statute of limitations is applicable to section 1985 cases. The language of the statute appears ambiguous in that regard, stating that the time period applies to any action "for injury to the personal rights of another as a civil rights suit under 42 U.S.C. 1983." Utah Code Ann. § 78–12–28(3) (1992). One possible interpretation of that language is that a section 1983 action is merely an example of an injury to the personal rights of another. Another interpretation is that the statute applies only to section 1983 actions. If the latter interpretation is applied, section 1985 actions could be subject to the four-year residual statute. The issue of equal protection could then arise as these two civil rights actions would be subject to different limitations periods. Even if this were the case, the court finds that the two statutes are distinguishable and any difference in limitations periods would be rationally based. First, section 1983 actions are the most prevalent of the two and it is reasonable that the Utah Legislature addressed only section 1983 claims. Second, section 1985 deals with conspiracies and class-based or racial animus. It is rational that the legislature could find that this particular cause of action would take more time to develop than the simpler 1983 action.

Although not necessary to this decision, the court believes that the same statute of limitations should apply to section 1985 claims as section 1983 claims as both actions involve injury to the personal rights of another. *See McDougal v. County of Imperial*, 942 F.2d 668, 673 (9th Cir.1991).

legislature had improperly discriminated against the federal cause of action. But that is not the case here. In fact, Utah law provides that a notice of claim against the state or an employee must be filed with the state attorney general within one year after the claim arises. Utah Code Ann. § 63–30–12 (1989).[8]

It may also be argued that a state legislature could be motivated by the desire to limit *any* liability on the part of state officers, either in state or federal court. For example, in *Sheets v. Lindsey*, the court was troubled by the possibility of such an "improper motive" by the legislature.

> The court is troubled by a state law enacted for the sole purpose of limiting the time period in which a § 1983 claim may be brought. Such a statute may well be motivated by a legislative desire to limit the liability of persons acting under color of state law. In contrast, the court believes that the enactment of a state general or residual statute of limitations is not likely to be motivated by a legislative desire to limit the liability of its officers or employees.

783 F.Supp. 577, 582, n. 10 (D.Utah 1991).

In this court's opinion, it is equally reasonable to believe that the Utah Legislature's adoption of the two-year limitations period was based upon a desire to establish an express statute of limitations within the parameters set by the Tenth Circuit in *Mismash v. Murray City*, 730 F.2d 1366 (10th Cir.1984). The *Mismash* court had concluded that "all section 1983 claims should be characterized as actions for injury to the rights of another." *Id.* at 1367. In selecting the four-year residual statute as the most analogous limitations period, the Tenth Circuit noted that its selection was due to the fact that Utah had no statute of limitations "expressly applicable to actions for injury to the rights of another." *Id.* Due to the similarity in language between the *Mismash* decision and the Utah statute, it is reasonable to believe that the Utah Legislature was attempting to satisfy the Tenth Circuit's concerns when it enacted the specific limitations period. Furthermore, as discussed earlier, the court believes that the legislature was using its best judgment in preferring a two-year time limit over other possible limitation periods.

The court recognizes that the Utah Legislature was also motivated by state interests in setting the statute of limitations at two years. However, the court finds that Utah's interests in these issues are legitimate and certainly do not amount to an invasion of the federal domain. Utah courts have concurrent jurisdiction over section 1983 claims,[9] and therefore, the state has a legitimate interest in the efficient adjudication of these actions.[10] And, it is again important to note that by the language of section 1988, Congress specifically allowed state law to govern certain aspects of the Civil Rights Acts, including statutes of limitations. Congress has the power at any time to set specific limitations periods for any civil rights action. It may impose one year, two years, four years, or

---

**8.** The notice of claim requirement gives the affected governmental entity an opportunity to promptly investigate and remedy defects, avoid unnecessary litigation, minimize difficulties which could arise upon changes in administrative personnel, and make necessary budget adjustments. Its imposition, therefore, as to governmental entities but not to other tortfeasors does not constitute a denial of equal protection. *Sears v. Southworth*, 563 P.2d 192 (Utah 1977).

**9.** *Kish v. Wright*, 562 P.2d 625, 627 (1977).

**10.** The state also offers a potentially more favorable forum to civil rights plaintiffs. In state civil cases, juries consist of eight members, although the parties may stipulate to fewer. Utah Code Ann. § 78–46–5(2) (1992). Furthermore, the Utah Constitution provides that three-fourths of the jury may return a verdict. Utah Const. Art. I § 10. In contrast, federal court in the District of Utah currently provides a jury of twelve members and requires a unanimous verdict. *See* Utah District Court Local Rule 113(a)(1).

In addition, the court does not believe that state courts are a less favorable forum for section 1983 claims merely because the defendants in those actions are often state officers. Although the federal forum was certainly preferable at the time of the enactment of the Civil Rights Acts in 1871, the court believes that present-day members of the Utah state judiciary have shown that they are equally interested in proper vindication of federal civil rights claims.

ten years, and such Congressional action would render any state statute of limitations moot as applied to section 1983 claims. However, as long as Congress chooses to defer to the states in questions of time limitations, the court cannot see that a state is violating the principles of federalism by setting an express statute of limitations for civil rights actions, particularly when the state has concurrent jurisdiction.[11]

■ The *Sheets* decision implies that any state which shortens its statute of limitations governing civil rights claims may run afoul of federal law. In choosing the four-year time period as the "most analogous," the *Sheets* court asserted that a state is less likely to alter its residual statute governing various personal injury actions for the purpose of discriminating against a federal claim. 783 F.Supp. at 582 n. 10. However, the mere fact that legislative discrimination is "less likely" does not mean there has been an elimination of the possibility of states acting in such a discriminatory manner. If a state legislature were to shorten a residual statute of limitations, the *Sheets* opinion indicates that a federal court should assume that the motive was to "truncate" the federal cause of action. But in attempting to guess the motives of a state legislature, federal courts would be undertaking a task too difficult and too imprecise to be of value in this circumstance.[12] Federal courts should be concerned with making sure that statutes of limitations meet due process and equal protection standards. If these requirements are met, and as long as the federal Congress has intentionally left the matter to the discretion of the various states, the state statutes of limitations for section 1983 actions should be honored by the federal courts.

*Conclusion*

The Utah Legislature has acted within its authority in setting the statute of limitations for section 1983 actions at two years. The statute is broad enough to encompass claims based on various factual scenarios arising out of section 1983, and does not violate a plaintiff's right to due process or equal protection. As long as the Congress of the United States continues to defer to the states on statutes of limitations for civil rights claims, it is within a state legislature's prerogative to set express time periods for such actions.

It is hereby ordered that plaintiff's cause of action under 42 U.S.C. section 1983 is barred by the two-year statute of limitations. Defendants' motion to dismiss is GRANTED.

IT IS SO ORDERED.

---

**11.** As discussed earlier, the limitations period must meet due process and equal protection considerations. If either were violated, the statute of limitations would not be applied. Such a result, however, would be due to the state's violation of the due process or equal protection clauses, not because the state improperly intruded into the federal domain.

**12.** The court recognizes that a legislature's motive for passing a particular statute can, in certain circumstances, be the basis for a judicial determination that the statute is invalid. *See Wallace v. Jaffree,* 472 U.S. 38, 55–60, 105 S.Ct. 2479, 2488–92, 86 L.Ed.2d 29 (1985). Such a concern, however, is not applicable to the instant case as there is no evidence whatsoever that the Utah Legislature's purpose was to obstruct or eliminate the right to bring a section 1983 claim.